UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal Number: |
| v. | : | 07-100 |
| **MARIBEL A. GUILLEN,** | : | VIOLATION: 18 U.S.C. §1343 (Wire Fraud) |
| | : | 18 U.S.C. §2 (Causing an Act to be Done) |
| **Defendant.** | : | |

### STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Maribel A. Guillen, under penalty of perjury, agrees and stipulates to the following facts in connection with her plea of guilty to one count of 18 U.S.C. §1343 (Wire Fraud).

### Background

The defendant, Maribel A. Guillen ("Guillen"), was employed by the International Intellectual Property Institute from April 2004, until January 2006. The International Intellectual Property Institute ("IIPI"), located at 1100 H Street, N.W., Suite 1100 in Washington, D.C., is a not-for-profit, 501(c)(3) corporation located in Washington, D.C. As an international development organization and think-tank, IIPI is dedicated to increasing awareness and understanding of the use of intellectual property as a tool for economic growth, particularly in developing countries. While working at IIPI, Guillen was responsible for the financial accounting of the organization. This included maintaining the organization's checkbook and "petty cash" account, processing payroll and expense reimbursements, and paying the organization's expenses via check or credit card. In addition, Guillen was responsible for

maintaining the organization's accounting books and reconciling them with its bank and credit card balances.

As part of the operation of IIPI, funds were deposited into a checking account IIPI maintained at Wachovia Bank (account number XXXXXXXXX1600) (hereinafter, "IIPI operating account"). Funds would be disbursed from the IIPI operating account in the normal course of business for payment of necessary expenses incurred such as the payment of IIPI's vendors and creditors or the reimbursement of employees for professional expenses. Guillen's official duties included manually preparing checks or making on-line, debit payments to vendors and creditors. Guillen had access to a rubber stamp bearing the signature of IIPI's chairman to endorse checks.

While employed by IIPI, Guillen had access to VISA credit cards held in the name of IIPI. One such VISA credit card was intended to be used for expenses incurred in the course of conducting official IIPI business (account number XXXX-XXXX-XXXX-5558) (hereinafter, "IIPI corporate credit card "). The prevailing policies and procedures established at IIPI made it clear that the IIPI corporate credit card was not to be used for personal expenses.

Guillen held personal checking accounts at Bank of America (account number XXXXXXXX8533) (hereinafter, "Bank of America checking account") and Wachovia Bank (account number XXXXXXXXX3114) (hereinafter, "Wachovia checking account"). Guillen was the sole signatory on the Bank of America checking account and the Wachovia checking account.

### The Embezzlement

Between from at least December 2004, to in or about January 2006, in the District of Columbia and elsewhere, defendant, MARIBEL A. GUILLEN, knowingly engaged in a scheme and artifice to defraud IIPI whereby she wrongfully obtained money belonging to and under the custody and control of IIPI which she appropriated for her personal benefit and enrichment.

### Manner and Means

In December 2004, shortly after beginning her employment with IIPI, Guillen began manually preparing and signing checks written on the IIPI operating account which she made payable to herself or to "petty cash." Guillen used a rubber stamp bearing the signature of IIPI's chairman to endorse the stolen checks. Guillen negotiated the checks and either cashed or deposited funds stolen from the IIPI operating account into either the Bank of America checking account or the Wachovia checking account.

In furtherance of the fraudulent scheme to obtain money belonging to IIPI, Guillen used the IIPI corporate credit card to charge personal expenses, obtain cash advances and convenience checks that Guillen made payable to herself. Guillen did so by using computers located at the IIPI's offices and at her Washington, D.C., residence to make unauthorized, on-line purchases with the IIPI corporate credit card from merchants located outside Washington, D.C. Guillen subsequently paid for such fraudulent purchases by making on-line, debit payments from IIPI's operating account at Wachovia Bank in Washington, D.C., to Chase Cardmember Services in Wilmington, Delaware. As a result of this fraudulent activity, Guillen received personal items to which she was not entitled including, merchandise, cash advances and convenience checks. Furthermore, Guillen took steps to hide the existence of the embezzlement from her employer.

This included intercepting, hiding or destroying IIPI corporate credit card statements and IIPI operating account bank statements and returned checks.

The fraudulent scheme was discovered in early 2006 when a representative from Wachovia Bank contacted IIPI's executive director concerning a check written on the IIPI operating account that Guillen was attempting to deposit into her account. The executive director had not authorized the payment and subsequently questioned Guillen about the matter. Guillen explained that she was simply attempting to secure a payroll advance. Moreover, Guillen falsely stated that this was the only occasion that she had attempted to write and cash a check written on the IIPI operating account without authorization. Given the apparent breach in trust, the executive director requested Guillen's resignation. On January 20, 2006, Guillen resigned from IIPI.

Following Guillen's resignation, IIPI reviewed its financial records and discovered that the accounting records were in disarray and several bank and credit card statements were missing. In March 2006, Guillen met with IIPI's president and chief executive officer and admitted that she had written checks to herself and to petty cash in amounts for which she was not entitled. Guillen also admitted that she made on-line, debit payments and used the IIPI corporate credit card for personal expenses without authorization. On August 30, 2006, Guillen provided a voluntary written statement to Special Agents Joanne M. Altenburg and Michael J. McGillicuddy of the Federal Bureau of Investigation. In that statement, Guillen admitted that, without authorization from IIPI officials, she had written checks to herself and to petty cash. She also admitted that she had used the IIPI corporate credit card for personal expenses without authorization and used money belonging to IIPI to pay for these expenditures. Because of the

fraudulent scheme executed by Maribel A. Guillen, IIPI suffered an actual loss in excess of $107,000.

Date: 4/13/07

_____
MARIBEL A. GUILLEN
Defendant

I have read each of the pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 4/13/07

_____
CARLOS VENEGAS, ESQUIRE
Attorney for the Defendant